Pepoet of Committee, Majority in Favoe of John Caeey.
Mr. Murphy, from the majority of the committee on privileges and elections, to which was referred the petition of Horatio N. Twombly, praying that the seat occupied by Hon. John Carey, of the seventh *472 Assembly district of the county of New York, be awarded to him, submitted a report in the words following, to wit:
The committee on privileges and elections, to whom was referred the petition of Horatio N. Twombly, to be admitted to the seat now held by John Carey of the seventh Assembly district of the county of New York, which petition bears date January 3, 1871, respectfully report, that the seventh Assembly district of the county of New York, is composed of the first, second, third, fourth, fifth, sixth, eighth, ninth, tenth, eleventh, twelfth and thirteenth election districts of the Fifteenth ward of said city; the nineteenth' and twentieth election districts of the ninth ward of said city, and the eighteenth election district of the sixteenth ward of said city ;• that the election for member of Assembly for .said district was held on the eighth day of November, 1870 ; that the whole number of votes cast for member of Assembly at this'election was four thousand four hundred andninety-six, of which the petitioner claims to have received two thousand two hundred and twenty-two, and of which the petitioner claims that John Oarey received two thousand two hundred and four, of which Howard Marsten received ten, of which there was for blank, one, and of which there were scattering fifty-nine.
The petitioner claims by his said petition to have been elected by eighteen votes more than were cast for any other candidate for said ofice of member of Assembly.
To the petition of the contestant the sitting member interposed a general denial. The testimon}r and proceedings taken and had before a committee on protest of the hoard of county canvassers of the county of New York, appointed by said board to investigate the protest of John Oarey against the counting of the poll of the twentieth district of the ninth ward, the eighteenth district of the sixteenth ward, and nineteen ballots cast for Horatio N. Twombly, which did not have on their face the number of the Assembly district, was admitted by contestant and sitting member, and agreed by them to be considered by your committee as evidence in these proceedings with the same force and effect as if the witnesses had been examined orally by this committee. A certified transcript of the canvass by the, county canvassers of the county of New York, was put-in evidence by the contestant, and which may be found at page eighty-nine of the printed evidence.
Thereupon it was suggested by the counsel for the sitting member that the contestant having made the certificate of the county canvass *473 his evidence, he was horrad by it, and as that showed upon its face that Carey was elected,'the contestant should not be allowed to produce evidence which contradicted the record put in by himself. This view is fully sustained by the case of Stephen Baker against Lewis H. Gregory, who held the certificate of election from the board- of county canvassers of Putnam county as the representative of that county, decided in 1867, when the Assembly was largely republican, as in that case the majority of the committee on privileges and elections, on the production of the returns of the board of county canvassers, allowed no evidence to be given, but changed the vote as returned by the county canvassers, and reported a resolution admitting the contestant, who was of the same politics as the majority oí the House that year, notwithstanding the sitting member offered to prove that four of the votes allowed by the committee of this House for Baker had been counted for him in the election returns.
Your committee, desirous of giving the contestant in the present case the utmost latitude, declined to take the view suggested by the counsel for the sitting member, and allowed the contestant to produce such oral testimony before your committee as he desired.
The only questions at issue before the committee were as to the returns of the twentieth district of the ninth ward, and the eighteenth district of the sixteenth ward. The irregularities alleged in respect to the twentieth district of the ninth ward were : 1. That during, or immediately prior to the canvass of the vote for member of Assembly, in said district, two inspectors of election absented themselves from the polling place, and continued absent for the space of from ten to fifteen minutes, and thereby caused an adjournment or recess of said board of inspectors, contrary to the provisions of section 13, chapter .138, of the Laws of 1870. -2. That ballots were irregularly counted» 3. That one or more ballots or tickets known and indorsed as “ An act in relation to the canal and general fund debts,” were counted by the inspectors of election of said district as Assembly ballots, and credited to the contestants.
In respect to these irregularities, first presented to the said committee on protest, and also to this committee, your committee respectfully represent that while they are in contravention of the statute of 1870, and by a strict construction of said statute, perhaps could be rejected, yet as their irregularity arose more from inattention than' any apparent design to produce fraud in the canvass of the votes, *474 your committee is of the opinion tbat the poll of said twentieth district of the ninth ward should be admitted, which is as follows :
Eor the contestant. 181 votes.
For the sitting member. 114 “
giving a majority, in said district, for the contestant, of sixty-seven votes.
The irregularity urged before the committee on 'protest of the board of canvassers (see affidavit of Patrick Reid, at page eight; affidavit of James E. Kelly, page four; and affidavit of Richard Kenehan, page five of printed testimony), and before the committee of this House, in relation to the eighteenth district of the sixteenth ward, consists in the fact that Mr. William Terhune, a person not an inspector, participated in the canvass of the votes for member of Assembly, and did actually handle the votes for member of Assembly, and perform acts and duties allowed by law only to be performed by an inspector of election. See pages 92, 93, 94, 95 and 96 of printed testimony.
The fact of the participation of the said Terhune in handling the ballots before they were opened, was alleged before the committee on protest of the board of county canvassers of the county of New York, and was fully established before your committee by the oral testimony of Charles E. Denison and David Henifiques, inspectors, and Isaac Lud-lum, the republican poll clerk in said district. It was also shown by the evidence of these two persons, who were witnesses for the contestant, that the ballots in favor of the contestant could be readily distinguished from the ballots in favor of the sitting member, by the indorsement on said ballots. It also appeared that a person occupying the position of Mr. Terhune, and handling the ballots as he was shown to have handled them, could have substituted ballots in favor of 'the contesting member for ballots of the sitting* member. In other words, that he could have substituted one ballot for another. It further appeared before your committee that said Terhune was a friend and partisan, of the contestant, and a republican in politics, holding the position of republican supervisor under the late statutes of the United States referring to elections. It further appeared before your committee, that said Terhune took no part in the canvass of the general or congressional ballots, but only took part in the canvass of the Assembly ballots. It was not pretended or claimed that Terhune’s appointment by Judge Woodruff, as a United States supervisor, gave him any authority to interfere or take part in the canvass of the Assembly ballot^.
*475 Your committee are unable to perceive why the aid and assistance of Mr. Terhune was required in the canvass of the Assembly ballots more than in the canvass of either the general or State tickets. While your committee do not desire to cast any imputation upon Mr. Ter-hune, more than appears in the evidence, your- committee cannot fail to suggest, that while Mr. Terhune had an opportunity to appear and testify before the committee on protests of . the board of county canvassers of the county of New York, and was also subpoenaed to appear and testify before this committee; in both instances he has failed to present himself to make any excuse or explanation for his participation in the canvass of the Assembly ballots of the eighteenth district of the sixteenth ward. Your committee have carefully considered the evidence upon this branch of the case, and while they would be unwilling to reject any poll upon mere technicalities, yet in the case of the poll of the eighteenth district of the sixteenth ward, in the judgment of your committee, the violation of the law in allowing Mr. Terhune, not an inspector, to handle the votes of member of Assembly, is palpable, as it offered an opportunity for the commission of fraud.. Your committee, therefore, upon due deliberation, have rejected the poll or votes for each of the parties in said district, which were as follows :
For the contestant. 238 votes.
For the sitting member. 218 “
For Howard T. Marston. 3 “
Scattering..'. 7 “
_q ■
Total.:. 664 “
Majority for the contestant in this district of twenty votes. The official canvass shows that this district gave a majority of twenty-four for the democratic candidate for Governor, while Mr. Twombly claims to have carried it by twenty majority, a difference of forty-four votes, while he did not show why he ran so far ahead of the republican candidate for Governor.
The law of 1865, the only one in existence prior to the passage of the law of 1870, containing any provision referring to this point and its provision, were confined to the then metropolitan police district, after enumerating the qualifications of inspectors and canvassers, then goes on to say (see Laws of 1865, chap. 740, sec. 1): “Any person acting as such inspector or canvasser, without the qualifications herein prescribed, and any person who shall pay, or cause to be paid, for (he *476 services of such inspector or canvasser, or who- shall willfully or knowingly appoint or consent to appoint any such officer without such qualifications, shall, on conviction thereof, be deemed guilty of a misdemeanor, and shall be punished therefor according to law.” It will be readily noticed that this provision is different from the act of 1870, which is as follows: “ All persons are prohibited from engaging in or assisting in the canvass and estimate of votes as aforesaid, except the inspectors of election and poll clerks of each district.” (See section 13, chapter 138, Laws 1870.) Here is a distinct and positive prohibition against all persons from engaging in or assisting in the canvass or estimate of the votes, except inspectors of election and poll clerks. Can it tor a moment be pretended that the act of engaging in or assisting in the canvass or estimate of the votes of the eighteenth election district of the sixteenth ward, by Terhune, was not a direct and palpable violation of this provision of the statute, and being so, the propriety of throwing out the poll of that-distriet cannot, with a due regard to the right of suffrage, be for one moment questioned. The public good is paramount to all private considerations; and certainly there is no case where the public good can be advanced more than by a rigid adherence to the most stringent provisions of the laws governing our elections. It seems to your committee that it would be a most dangerous precedent to establish that the chairman of a board of inspectors, or even a majority of the board, can call in any person to canvass the votes ; if they can call in one, they can call in two, three, five or ten. Hnder such a construction of the law, what security would there be to the ballot? It is much more important to the people of this State that the voting should be regulated by proper laws and the counting of the ballots secured from an opportunity of fraud than that either Mr. Carey or Mr. Twombly should hold a seat in this body.
It should be borne in mind that the act of April 5th, 1870, under which this election was held, is applicable only to the city and county of New York, and was passed by the Legislature for the purpose of securing to the electors of said city and county a fair election and an honest canvass of the ballots; its provisions do not apply to any other portion of the State. The statute of 1865, Laws of 1865, chapter 740, section 1, referred to above, was repealed by chapter 503, of the Laws of 1870; therefore, on the eighth of November, 1870, when this election took place, there was no election law “ respecting elections other than for militia and town officers ” in the *477 other portions of tbe State which contained any prohibition in relation to persons other than inspectors of election talcing part in the canvassing of the ballots ; it would seem, therefore, that in the city and county of New York it was the intention of the Legislature, in passing this statute of 1870, to impose the strictest regulations in conducting elections. Your committee, therefore, think it is only carrying out the intention of the Legislature of 1870 in holding all parties to a strict adherence to the provisions of the election laws applicable to elections held in said city and county.
The action of your committee in rejecting the votes of the eighteenth district of the sixteenth ward, is sustained by precedent. In the case of James Jackson against Anthony Wayne, arising on the election of member of Congress from the then lower or eastern congressional district of the State of Georgia, decided during the first session of the second Congress, viz., 1792, the returns of the county of Effingham were rejected by the House of Representatives for the reason, among others, that, as the law of Georgia, at that time, required that three magistrates should preside at election, returns signed by three persons, two of whom were not magistrates, were defective. In the present ease, though Terhune did not sign the returns, it is in evidence that he took part in the canvass of the votes; and it seems but fair reasoning that if a return, certified by persons not qualified according to the provisions of the law under which the election is held, is rejected because it is a violation of the strict provisions of the law, the canvass by four persons, one of whom is a citizen, acting in his individual capacity, having received no appointment or election as an inspector, having taken no oath of office as an inspector, should also be rejected.
In the case of Howard v. Cooper, decided by the House of Representatives on the fifteenth day of May, 1860, it was held that as the law of Michigan required that the board of inspectors should consist of three persons, and but two served, the vote was rejected.
Your committee are at a loss to see by what reasoning it can be claimed that if the absence of one member from a board of inspectors shall vitiate the returns, the addition of a person not a member, should not also vitiate the returns, particularly when, as in this case, it is shown by uncontradicted evidence, that the additional member was placed in a situation where it was in his power to commit acts of fraud, and when no responsibility rested upon him as an inspector of election.
*478 In the case of Dodge v. Brooks, decided by the House of Representatives in 1866, the poll of the fifteenth district of the eighteenth ward of the city of, New York, was rejected on the ground, among others, that the clerk who'acted at a board of registry, was neither sworn nor appointed. Your committee can see no reason, if the participation of a person, not a sworn officer as clerk to the registry, should vitiate the election, why the participation of a person in the counting or canvass of votes, not appointed or sworn as an inspector, but an entire stranger, should not vitiate the returns of the district in which he thus unlawfully participated in the canvass. The case of the People v. Cook, cited by the contestant, so far from being against the conclusions arrived at by your committee, fully sustain the view they have taken in this case. Your committee, therefore, has concluded to allow the poll in the twentieth district of the ninth ward, and reject the poll of the eighteenth district of the sixteenth ward. The result will be as follows :
Fifteenth "Wand.
Horatio N. Twombly* John Oarey.
1st District. 141 ■ 154
2d U .. 123 70.
3d .. 146' 110
4th .. 171 168-
5th .. 160 161
6th 217 200
8th 179 185
9 th 65 139
10 th 82 155
11th 43 107
12th .. 186 223
13th .. 148 107
JNinth "Wakd.
19th District.. CO 03 ^ fcO
20th “ . l-J H1CO f — 1
Sixteenth W ARD.
18th District. 238 218
2,222 O
Deduct 18th district, 16th ward. 238 oo r — {
■ 1,984 1,986
Majority for Oarey, 2.
*479 Tom’ committee entertain no doubt, after a full investigation of the facts, that a majority of all the legal votes cast in the seventh Assembly district were cast for Mr. Carey; and in coming to this conclusion they have allowed t© the contestant every vote to which, in their judgment, he was entitled ; giving to him the benefit of all doubts wliich rested upon their minds, after a most patient and careful examination and deliberation. In accordance with this judgment they recommend the adoption of the following resolution:
JZesolved, That the lion. John Carey, the sitting member, is entitled to the seat in this House as the representative from the seventh • Assembly district of the county of New York.
WILLIAM D. MURPHY.
DAVID B. HILL. -
G-EORGE L. LOUTREL.
WILLIAM W. MOSELEY.
DENIS BURNS.
Mr. Goodrich moved to lay the report and resolution upon the table, and that the same be made the special order for to-morrow morning immediately after reading the journal.
Mr. Gleason called for a division of the question.
Mr. Speaker put the question whether the House would agree to the first part of the motion, to lay said report on the table, and it was determined in the negative.
Ayes, 60. Noes, 63.
Mr. Speaker then put the question whether the House would agree to the second part of said motion, to make said report a special order, and it was determined in the negative, two-thirds of all the members present not voting in favor thereof.
Ayes,-60. Noes, 63.
Minoeity Repoet.
Mr. Bolt, from the minority of said committee, submitted a report in the words following, to wit:
The.undersigned respectfully dissents from the report of the majority of the committee on privileges and- elections, declaring the Hon. John Carey, entitled to the seat now held by him from the seventh Assembly district of the city of New York.
The certificate of election was awarded to Mr. Carey, by the county canvassers of New York, by rejecting entirely the'votes of *480 the twentieth district of the ninth ward; also, the votes of the eighteenth district of the sixteenth ward. After a thorough scrutiny of the elections held in the districts above named, the following testimony has been adduced, and upon yhich the minority of the committee dissent from the conclusion of the majority.
The statute of 1870, section 13, provides “ That the several boards of inspectors of election, at the close and without adjournment or recess, publicly proceed to the canvass and estimates of the votes.” Under this section of the statute, in the twentieth district of the ninth ward, the inspectors proceeded to the canvass and estimate of the vote of the said district. It appears from the evidence adduced, that after the canvass had continued five or six consecutive hours, Mr. Forbes and Mr. Decker, two inspectors, went out (though not in company), as they say, in obedience to a call of nature,” and were gone five or ten minutes — leaving the box containing the votes for member of Assembly sealed, in the care of one inspector, two poll clerks, and in the presence of the United States supervisor and the police. In the meantime, the poll clerks were arranging their papers. After the return of Mr. Forbes and Mr. Decker, the box containing the votes for member of Assembly was unsealed and the canvass was continued to its conclusion, which occurred about 4 o’clock the next morning.
There was no adjournment of the'board, or other irregularity, and there is no pretense by the friends of Mr. Carey that any fraud was perpetrated, or attempted to be perpetrated, nor any wrong whatever affecting the purity ot the election in said district, and the undersigned can find no reason, either in law or equity, for the disfranchisement of said district of the votes for member of Assembly.
It is the opinion of the undersigned, that there is not an election district in the State where there has not been a temporary absence of some individual member or members of the board of inspectors, and the idea that such absence vitiates the election and disfranchises the whole district, is novel to the minority of your committee.
In the Laws of 1870, section 13, it is provided : “ All persons are prohibited from engaging in, or assisting "in the canvass and estimate of the votes aforesaid, ' except the inspectors of election and poll clerks of each district. Any person offending against this last provision shall be deemed guilty of, and punished as for a misdemeanor!’-’
It appears-in evidence, that in the eighteenth district of the sixteenth ward, Mr. Terhune, a United States supervisor, on the invita *481 tion of one of the inspectors of election,.did participate in the count and canvass of the vote for member of Assembly of said district, and there is no doubt but that Mr. Terhune rendered himself liable to indictment for this violation of the law in question. But while the law makes ample provision' for the punishment of persons violating its enactments, nowhere in the law is there a word or intimation tha such violation vitiates the election or disfranchises the electors who exercised, the right of suffrage at such election. Besides, there is no proof that any fraud, or wrong of any kind to the interests of Mr. Carey was practiced ; but the evidence, so far as it goes, is to the effect that no fraud of any'kind was practiced at said election.
In the twentieth district of the ninth ward, the whole vote cast for member of Assembly was three hundred and eleven, of which one hundred and eighty-one were given for Mr. Twombly, and one hundred and fourteen for Mr. Carey, and sixteen scattering, leaving a majority of sixty-seven for Mr. Twombly. In the eighteenth district of the sixteenth ward, the whole vote cast for member of Assembly was four hundred and sixty-six, of which Mr. Twombly received two hundred and thirty-eight; Mr. Carey received two hundred and eighteen, and scattering ten, leaving a majority for Mr. Twombly of twenty votes.
These majorities honestly belong to Mr. Twombly, which, added to the other majorities of the district, concerning which there is no dispute, elects Mr. Twombly by a majority of eighteen.
Thus believing, the undersigned respectfully recommend the adoption of the following resolution : ,
Resolved^ That the petition of Horatio N. Twombly to be admitted to the seat now occupied by Hon. John Carey, be granted.
ALPHEUS BOLT.
ROBERT C. BLACKALL.
Mr. Fields movqd the previous question.
Mr. Speaker put the question, “ Shall the main question be now put ?” and it was determined in the affirmative.
The report and resolutions of the minority of said committee not having been moved as a substitute for the majority,
Mr. Speaker put the question on the adoption of the resolution of the majority of said committee, and it was determined in the affirmative.
*482 Mr. Fields moved to reconsider the' vote on the adoption of said resolution, and on that motion moved the previous question.
Mr. Speaker put the question, “ Shall the 'main question be now put?” and it was determined in the affirmative.
Mr. Speaker then put the question whether the House would agree to said motion to reconsider, and it was determined in the negative.
Assembly Journal, 1871, vol. 1, pages 149 to 159, both inclusive. See for testimony, affidavits, etc., Assembly Documents, 1871, vol. 3,
No. 27, pages 9 to 99 inclusive.